BROWN v. COOK et al.

No. 7959.   Decided July 29, 1953.   (260 P. 2d 544.)

506

See 39 C.J.S. Habeas Corpus, sec. 54. Contempt, inability to comply with order as defense to charge of. 12 Am. Jur., Contempt, sec. 72; 120 A.L.R. 703.

*Ray E. Nash,* Vernal, for appellant.

*Colton & Hammond* and *Whitney D. Hammond,* Vernal, *Dean W. Sheffield,* Salt Lake City, for respondent.

WADE, Justice.

Plaintiff Tommie Maurine Brown, respondent here, instituted habeas corpus proceedings to gain custody of Ronald Glen Cook, her three year old son, from defendants Harold and Cora Cook, his paternal grandparents. Glen H. Cook, father of the child, was out of the state in the military services and not available for service of process at the time the action was commenced and he was not made a party to the action. He left the child in his parents' custody. In June, 1952 the father and mother were divorced in an action commenced by her in Wyoming where she was then living, but neither the father nor child was in that state and the question of custody of the child was not litigated in that action. Shortly thereafter plaintiff married Mr. Brown, her present husband, and then returned to Utah to get the child and commenced these proceedings after defendants refused to surrender him to her. The writ was served upon defendants on December 1, 1952 in Uintah County at a time when the child was in their custody and control. It ordered the defendants to bring the child with them into court on December 9th in the Court House at Vernal, Utah at 10:00 a.m. of that day to be dealt with in accordance with law.

Defendants appeared at the appointed time and place without the child. Upon their counsel's explanation to the court that the father had appeared the day before and taken the child from defendants, the court suggested that in failing to produce the child as ordered after being served with the writ while he was in their custody, they were guilty of contempt of court. The plaintiff was then called and testified in support of her right to the custody of the child; defendants offered no testimony on that question but called the defendant Harold Cook on the question of contempt. He explained that immediately after the writ was served he contacted his son both by telephone and telegraph, informing him that the writ had been served ordering them to bring the child into court and earnestly requested him to come home, which he did the day before the hearing and stated that he was going to take the child and go out of the state, and that later while the defendants were away from home the father left, taking the child and his clothing and that he did not know where they were at the time of the hearing. He further said that the father had consulted counsel before returning.

The court, at the end of the hearing took both the matter of custody and contempt under advisement, giving permission to counsel to submit authorities on either or both subjects. Two days later he announced his decision in open court giving detailed statements of the law and facts as he found them. He found the mother a fit and proper person for the custody of the child and later signed and entered findings of fact, conclusions of law and judgment to that effect.

No formal findings, conclusions or judgment on the contempt were drawn up or signed but in his oral decision, later transcribed and made a part of the record on appeal, the court made detailed findings of the facts including the facts herein above stated. He further found that the defendant did nothing to prevent the father from taking the child away except to tell him of the order, and that the

defendant Harold Cook had permitted and connived with the father to get the child out of the jurisdiction of the court and found him guilty of contempt. The court then sentenced such defendant to 30 days in jail and fined him $150.00, but stated that the jail sentence and the fine, except for $50.00 thereof, would be remitted if the child were surrendered to the mother within ten days. Defendant Harold Cook appeals from both judgments.

Four problems require consideration on this appeal: 1. Did the court have jurisdiction to determine as between the parties which one had the right to the custody of this child? 2. Does the evidence support the court's findings and conclusions that appellant was guilty of contempt? 3. Was the contempt, if any, committed in the immediate presence of the court? 4. Did the court err in failing to make and enter formal written findings, conclusions and judgment?

The court acquired jurisdiction to determine, as between the parties to this action, the right to the custody of this child. When the writ was served the child was within the jurisdiction of the court, and in the custody of the defendants. At that time the court acquired juris-  ■
diction of the parties and the subject matter of the action even though neither the child nor the defendants were actually before the court. Parties are seldom actually in the presence of the court when the court first acquires jurisdiction. The court did not lose that jurisdiction by the child being spirited away even though it were conceded, which it is not, that the child was not actually within the state at the time of the hearing. Once having acquired jurisdiction courts often exercise such jurisdiction in custody cases when the subject is outside of its territorial jurisdiction.[1] The father was not a party to this action so

---

[1] See *Little* v. *Little*, 249 Ala. 144, 30 So. 2d 386, 171 A.L.R. 1399; *Maloney* v. *Maloney*, 67 Cal. App. 2d 278, 154 P. 2d 426; *Roberts* v. *Roberts*, 300 Ky. 454, 189 S.W. 2d 691; *Cole* v. *Cole*, 194 Miss. 292, 12 So. 2d 425; *McMillin* v *McMillin*, 114 Colo. 247, 158 P. 2d 444, 160 A.L.R. 396; *State* v. *Porterfield*, 221 Mo. App. 847, 285

the right to custody between him and plaintiff was not determined by this judgment. That such is the case was not the fault of the plaintiff for he was neither within the jurisdiction of the court nor had custody of the child when the suit was commenced, and by secretly coming and taking the child he afforded her no opportunity to join him in the action. Had he been willing to litigate his right to the custody of the child, he could have intervened and asserted his claim. Although the court had jurisdiction to determine this question, by secreting the child away from the court, it was effectively prevented from enforcing its decree, and the plaintiff was denied the opportunity to litigate her right to the custody of her child which she was in justice entitled to do.

The evidence supports the finding that appellant was guilty of contempt. Section 78-32-1 U.C.A. 1953 provides that: "(5) Disobedience of any lawful judgment, order or process of the court" is contempt of its authority. It is a general rule, to which this court has repeatedly adhered, that inability to comply with the order is a complete defense.[2] But such inability to perform is no defense where the person charged has lost such ability as the result of his own actions. Such defense is only effective where after using due diligence he still is not able to comply with the order.[3] This is a different problem than is presented by section 78-32-12, U.C.A. 1953, which only authorizes imprisonment until the act is performed where the contempt consists in the omission to perform an act which is yet in the power of the person to perform. The penalty of that statute may only be imposed where present

---

S.W. 786; *Burckhalter* v. *Conyer*, Tex. Com. App., 285 S.W. 606; *Peacock* v. *Bradshaw*, 145 Tex. 68, 194 S.W. 2d 551.

[2]See *in re Clift's Estate*, 108 Utah 336, 159 P. 2d 872; *In re Mary Jane Stevens Company* v. *Foley*, 67 Utah 578, 248 P. 815; *State* v. *Bartholemew*, 85 Utah 94, 38 P. 2d 753; *Limb* v. *Limb*, 113 Utah 385, 195 P. 2d 263.

[3]See cases cited in note 2, supra.

ability to perform is shown. The punishment ordered in this case was under section 78-32-10, U.C.A. 1953, which does not require present ability to perform.

There is no claim that the order was unlawful or that appellant obeyed it, but he claims there was no showing that he had the ability to perform. Since inability to perform is a defense, he had the burden of persuading the court on that subject.[4] He contends that he was only caring for the child at the request of its father, that he as between them had the paramount right to its custody and that when the father returned he had no right, power or duty to try to prevent the child's father from taking it away, and further that since the father was not made a party to this action it was not proper for the court to punish appellant in order to induce the child's father to surrender the custody of the child, which would amount to depriving him of his rights thereto without due process.

If it were shown that appellant had no power to prevent the father from taking the child away, and that such taking rendered him unable to obey the order, that would be a defense.[5] However, the question of whether appellant has a right or duty to try to prevent the father from taking the child away should be considered in determining this matter. The father, had he chosen, could have intervened and asserted his right to the custody of the child in this action. The plaintiff had no power to join him because he was not within the jurisdiction of the court when the action was commenced, and she could not join him later because he came into the jurisdiction and secretly removed the child without her knowing that he was there. So the failure to litigate his right to the custody of the child was all of his own choosing. Under such circumstances, appellant owed a duty to the court to use reasonable diligence to prevent the child from being taken from his custody and thereby

[4]See *State* v. *Bartholemew*, supra.
[5]See *Limb* v. *Limb*, supra.

make it impossible for him to comply with the order. The policy of the law is to litigate rights and not to obtain them by force or secret dealings.

There were a number of things which appellant could have done to prevent the father from taking the child away. He could have advised him to come with him into court and defend his right there; he could have sought legal advice thereon or disclosed the father's intentions to the sheriff or plaintiff or her counsel, or the court. There is no showing that such procedure would have been ineffective. The evidence shows that the appellant did nothing to prevent the father from taking the child except to notify him of the order which had been served on him. He admits that by telephone and telegraph he urged the father to come, and that the father came upon such urging and said he was going to take the child, but when the child was actually taken away appellant was not home. Counsel strenuously argues that appellant has no duty to prevent the father from spiriting the child away, and that the court is powerless to do anything about it. It seems quite probable that such was his attitude when the child was taken, and that the court was correct in finding that he connived with the father to get the child out of the court's jurisdiction. Under such facts he was guilty of contempt.

Section 78-32-3, U.C.A. 1953 provides that:

"When a contempt is committed in the immediate view and presence of the court or judge at chambers, it may be punished summarily, for which an order must be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as prescribed in section 78-32-10 hereof. When the contempt is not committed in the immediate view and presence of the court or judge at chambers, an affidavit shall be presented to the court or judge of the facts constituting the contempt, or a statement of the facts by the referees or arbitrators or other judicial officers."

Under this section an affidavit is required stating the facts where the contempt is not committed in the immediate presence of the court. The contempt of which appellant was convicted was his disobedience to the court's order to bring the child into court so that the court could deal with him according to law. Appellant appeared in court but failed to produce the child. The purpose of the affidavit is two-fold: first to inform the court of the contempt, and second to inform the person charged therewith of the charge which he must meet.[6] Both appellant and the court had definite information of the facts which constituted the contempt as much as though he had by a positive act interfered with the court's proceedings, so there was no reason for an affidavit to inform them of facts they were both well aware of. The court made it clear to appellant as soon as it became apparent that the child was not going to be produced, that he contemplated pressing a contempt charge, whereupon appellant took the witness stand and presented his defense, so he was deprived of no opportunity to exonerate himself from punishment. Generally, contempts committed in the immediate presence of the court are such because they interfere with the court's procedure with its business.[7] This failure to produce the child effectively prevented the court from dealing with the child's custody in accordance with law. For, although the court still retained jurisdiction to decide the right to its custody as between the parties to this action, it lost all effective power to enforce its judgment and place the child in the custody of the person who it determined had such right.

The cases are in accord with this holding: In *Ex parte Sternes*, 77 Cal. 156, 19 P. 275, it was held that failure to produce a prisoner as required by a writ was a contempt

---

[6]See *In re Schulder*, 62 Utah 591, 221 P. 565.

[7]See 17 C.J.S. Contempt § 26, page 37; 12 Am. Jur. 390 and 391, "Contempt" Sec. 4.

committed in the immediate presence of the court, and no affidavit was required. In *Smythe* v. *Smythe,* 28 Okla. 266, 114 P. 257, the court in a child custody case the same as this one, except the father instead of the grandfather failed to produce the child, was held to have committed a contempt in the immediate presence of the court. The case of *State ex rel. Ewing* v. *Morris,* 120 Wash. 146, 207 P. 18, involved the failure of a receiver to file a report as ordered by the court which the court held was committed in the immediate presence of the court. The reasons given apply to this case.

Appellant relies on *Robinson* v. *City Court of Ogden,* 112 Utah 36, 185 P.2d 256. That case is so different in its facts that it is of no aid in determining this one. There the city judge while riding on the elevator, after court had adjourned, overheard a disparaging statement against the court by a person he had previously found guilty and sentenced for a crime. He immediately took the person back into court and sentenced him for contempt. We held that the remark, though in the presence of the judge, was not in the presence of the court, because court had adjourned and it did not interfere with the court business, distinguishing between the judge while attending to the court's business while in session or in chambers and while attending to his private affairs.

The court erred in failing to make formal written findings, conclusions and judgment as required by Rule 52(a) and Section 78-32-3 U.C.A. 1953, supra. Section 78-32-3 provides that when a contempt is committed in the immediate presence of the court it may be punished summarily,

"for which an order must be made, reciting the facts as occurring in such immediate view and presence, adjudging that the person proceeded against is thereby guilty of a contempt, and that he be punished as prescribed in section 78-32-10 hereof."

Rule 52(a) provides that in
"all actions tried upon the facts without a jury  *  *  *  the court shall, unless the same are waived, find the facts specially and state

separately its conclusions of law thereon and direct the entry of the appropriate judgment; * * *."

From the foregoing it is clear that written findings of facts, conclusions of law and judgment are contemplated, that the facts must be recited as occurring in the immediate view and presence of the court, adjudging that a contempt has been committed and the punishment. Although the court in open court announced in detail its findings, conclusions and decree, that does not meet the requirements of these provisions. The matter is reversed and remanded to the District Court with directions to make findings of fact, conclusions of law and judgment in accordance with the views herein expressed. Each party shall bear his costs on appeal.

WOLFE, C. J., and McDONOUGH, and CROCKETT, J.J., concur.

HENRIOD, J., concurs in result.