**Richard A. VON HAKE, Plaintiff and Appellee,**

v.

**Harry Edward THOMAS and 1st National Credit Corp., a Nevada corporation, Defendants and Appellants.**

No. 19951.

Supreme Court of Utah.

July 5, 1988.

Rehearing Denied Aug. 10, 1988.

Robert R. Brown, Ronald C. Barker, Salt Lake City, for defendants and appellants.

H. Ralph Klemm, T. Quentin Cannon, Thomas R. Blonquist, Carolyn L. Driscoll, Salt Lake City, for plaintiff and appellee.

ZIMMERMAN, Justice:

Appellant Harry Edward Thomas challenges an order of commitment for contempt entered during supplemental proceedings in the Sixth Judicial District Court. Judge Don V. Tibbs found Thomas in contempt for failing to comply with court orders requiring Thomas to appear at a show-cause hearing and to produce certain documents. We affirm the finding of contempt, but only on the basis of Thomas's failure to appear.

A detailed review of the conduct leading to the contempt order is warranted. In March of 1982, appellee Richard A. Von Hake obtained a judgment for fraud against Thomas in the amount of $987,200, plus costs and interest.[1] Eighteen months later, when Thomas had failed to make any payments on the judgment, Von Hake commenced supplemental proceedings to discover the location and extent of Thomas's assets. Judge Tibbs ordered Thomas to appear at a hearing on November 4, 1983, to answer questions concerning his property and income. The court's order provided that when Thomas appeared, he was to produce all documents within his possession or control that might disclose information about his property and income, including tax returns.

When Thomas did not appear at the November 4th hearing, the court issued a bench warrant for his arrest. The warrant was later recalled when Thomas agreed to appear at a rescheduled hearing and to post a $1,000 appearance bond. The rescheduled supplemental proceeding was to be held on January 6, 1984, and Thomas was ordered to produce the documents at that time.

Thomas appeared on January 6th but produced no documents. Under questioning, he stated that none of the requested documents were within his possession or control. He repeatedly claimed that he had no recollection of the documents and that he had no knowledge of any property, income, or other assets under his control. Thomas did admit that he had filed certain tax returns during the preceding five years but claimed that neither he nor his accountant had copies. Thomas also admitted that he had made no attempt to obtain copies of those returns from the Internal Revenue Service ("IRS").

The court ordered Thomas to produce all state and federal tax returns that he had signed during the preceding five years, without regard to whether the returns had been filed on behalf of Thomas or on behalf of any of the numerous corporations or partnerships with which he was or had been affiliated. Thomas was ordered to produce the documents within six weeks and was expressly warned that a failure to produce would be considered a contempt of court. Judge Tibbs signed an order to that effect on February 1, 1984, specifically directing that if Thomas had not produced the tax returns by March 2, 1984, then he was to appear personally before the court to show cause why he should not be held in contempt.

On February 22nd, Thomas filed a motion for a sixty-day extension of time to

1. This judgment was affirmed in *Von Hake v. Thomas*, 705 P.2d 766 (Utah 1985). Thomas had not filed a supersedeas bond, and the sup-
plemental enforcement proceedings were not delayed by the appeal from the judgment of liability.

produce the tax returns. In support of his motion, he filed a notice sent to him by the IRS in response to his January 18th request for copies of his federal returns. The notice stated that the IRS would need up to sixty days to satisfy his request.

On March 2nd, the trial court held the scheduled show-cause hearing and granted Thomas's motion for a sixty-day extension. Thomas was represented by counsel but did not appear personally on March 2nd, as he had been ordered to do. However, neither Von Hake nor the court made an issue of Thomas's absence, apparently because the request for an extension of time to produce the returns was granted. The judge did state on the record that Thomas was to appear in person at a hearing on May 4th at which the court would determine whether he had fully complied with the amended order to produce the tax returns. The judge warned Thomas's attorney that Thomas would "find himself in jail" if he did not cooperate.

On March 12th, the court issued a written order confirming the grant of the sixty-day extension and directing Thomas to appear on May 4th "for a hearing on whether he has fully complied with the court's order and for sanctions associated therewith."

After the March hearing, Thomas produced his personal federal income tax returns for the years 1978, 1979, and 1982. On April 23rd, he moved for a second sixty-day extension of time to produce the additional tax returns ordered by the district court. The motion was supported by a letter from the IRS stating that copies of the personal returns for 1980 and 1981 had not yet been located and by Thomas's affidavit in which he swore that he had been unsuccessful in obtaining copies of corporate and partnership returns covered by the court's order. Thomas asked that the motion for more time be considered at the already scheduled May 4th hearing. In response, Von Hake's counsel submitted an affidavit opposing the request for a second extension of time and asking that the show-cause hearing be held as scheduled on May 4th. This affidavit included specific, factually supported allegations that Thomas had

access to the corporate and partnership returns covered by the discovery order and had willfully refused to produce them. Thomas later moved to strike the affidavit.

On May 4, 1984, the day of the scheduled show-cause hearing, Thomas filed a motion to continue the time for his appearance indefinitely. He supported the motion with a physician's affidavit stating that Thomas was under treatment as a psychiatric outpatient and that his appearance in court would exacerbate his medical condition.

The May 4th hearing proceeded as scheduled. Thomas did not appear but was represented by counsel. Because the contempt order at issue resulted from that hearing, a detailed review of the hearing record is required. The two main issues addressed by Von Hake's counsel were Thomas's failure to produce corporate and partnership tax returns and his failure to appear in court.

The record shows that at the time of the hearing, Thomas had not produced any of the requested corporate and partnership tax returns. While he purported to have made efforts to obtain copies from the entities on behalf of which the returns had been filed, he had made no attempt to obtain copies from the IRS. Thomas's counsel argued that his client had done all that could be required of him; because Thomas was no longer an officer or owner of the entities, he was not entitled to copies of the returns from the IRS and could not compel the entities to provide copies. Thomas's counsel also represented that, in any event, it would now be impossible to obtain the returns because one or more of the corporations whose returns Von Hake was seeking had gone into another court and obtained protective orders directing Thomas not to deliver the returns. Apparently neither Von Hake nor Judge Tibbs had been previously informed of this development.

In response to these arguments justifying Thomas's failure to produce the corporate and partnership tax returns, Von Hake's counsel asserted that Thomas did have access to the returns because the various entities in question were little more

than legal facades under the de facto control of Thomas which he was using to conceal his assets. This line of argument was supported in part by reference to depositions and testimony previously given in a related bankruptcy court proceeding.

Moving to the other ground for contempt, violation of the order to appear personally, the record shows that the judge first established that Thomas was not physically present in the courtroom. His lawyer stated that Thomas had come to Kanab, where the hearing was being held, but asked that before the court considered Thomas's failure to appear, it first dispose of the motion for a further continuance based on the physician's affidavit. Von Hake's counsel responded that this motion was merely another in a series of dilatory tactics and should be rejected as spurious, based on the fact that one week earlier Thomas had attended a different court hearing lasting seven hours and had testified for two hours. Thomas's counsel then attacked the legality of the order to appear and show cause. He argued that this order denied Thomas due process by prospectively requiring him to appear and show cause why he should not be held in contempt for failing to produce documents when it had not yet been established that Thomas had violated the underlying order to produce.

As these arguments progressed, the court twice instructed Thomas's counsel to get Thomas and bring him before the court. Thomas's counsel replied: "Your Honor, I cannot personally direct Mr. Thomas to appear especially in contradiction to the physician's affidavit. I can make inquiry as to whether or not he would be willing to appear in spite of that, your Honor."

During the hearing, the court commented on several aspects of Thomas's conduct throughout the supplemental proceedings. The court stated that it appeared that Thomas was transferring assets among various business entities so that Von Hake would be unable to identify assets without the entities' tax returns; that obtaining an order from another court protecting the tax returns was "a direct attempt to contravene an order of this Court"; and that in regard to the overall supplemental proceedings and Thomas's tactics, "I'm a little fed up with this, ... this court is being taken advantage of, ... the time has run out...."

At the conclusion of the hearing, the court denied Thomas's motion to extend the time for production of the tax returns, denied the motion to extend the time for Thomas's appearance, and denied the motion to strike the affidavit made by Von Hake's counsel concerning Thomas's ability to produce the documents. The court then found that Thomas had not complied with the order for production and had used improper and dilatory tactics to frustrate the court's orders and avoid appearing in court. Accordingly, the court found Thomas in contempt of court, sentenced him to thirty days in jail, and ordered the preparation of an arrest warrant.

On May 14, 1984, the court entered a formal order of commitment stating that Thomas was guilty of contempt for failing to produce the tax returns and for failing to appear at the May 4th hearing. We stayed execution of the order pending this appeal.

On appeal, Thomas seeks reversal of the order requiring production of the tax returns, the order denying him further time to produce, the order denying his motion to strike the affidavit of Von Hake's counsel, the order requiring his appearance on May 4th, the order denying his request for an extension of time to appear, and the order of contempt. We first address the contempt order.

Thomas argues that entry of the contempt order (i) was an abuse of the trial court's discretion because the underlying orders with which Thomas had failed to comply were unlawful, (ii) violated constitutional and statutory due process requirements because Thomas was not given adequate notice of the charges against him, and (iii) violated judicially imposed requirements regarding the substantive elements of a contempt finding.

Utah law on the subject of contempt must be drawn together from case law and

from statutes. The earliest law in this area is decisional and based on the common law. *See, e.g., In re Whitmore*, 9 Utah 441, 35 P. 524 (1894); *People v. Owens*, 8 Utah 20, 28 P. 871 (1892). The substantive and procedural rules were then altered by statute. *See, e.g., Compiled Laws of Utah* §§ 1790, 1807, 6990, 7058–73, 7525–29, 9465 (1917). This legislation was not comprehensive, and our subsequent decisions seem to take the position that to the extent the common law was not inconsistent with the statutes, it survives and can continue to evolve. *See, e.g., Powers v. Taylor*, 14 Utah 2d 118, 378 P.2d 519 (1963); *Robinson v. City Court ex rel. City of Ogden*, 112 Utah 36, 47–49, 185 P.2d 256, 261–62 (1947) (Wolfe, J., concurring). The relevant statutory law is now in sections 78–32–1 through –16, and sections 78–7–17 and –18 of the Code. *See* Utah Code Ann. §§ 78–7–17 to –18, 78–32–1 to –16 (1987).

Looking to these sources, we must consider three questions in determining the propriety of the district court's contempt order: (i) whether the order is appealable; (ii) whether Thomas was afforded the procedural protections required; and (iii) whether the facts and findings in the record satisfy the substantive requirements for a finding of contempt.

2. The distinction between criminal and civil contempt was developed in the case law prior to enactment of our contempt statutes. *See In re Whitmore*, 9 Utah 441, 35 P. 524 (1894). The current statutes do not make that distinction. However, a review of later cases shows that through the intermingling of statutory and common law in this area, the distinction continues to be important. *See, e.g., Limb v. Limb*, 113 Utah 385, 195 P.2d 263 (1948).

3. While it is the general rule in most jurisdictions that orders of civil contempt are not appealable, this Court appears to have taken a somewhat more pragmatic approach to the question. On occasion, we have treated an order of civil contempt as final and appealable. *See, e.g., Bradshaw v. Kershaw*, 627 P.2d 528 (Utah 1981); *Thomas v. Thomas*, 569 P.2d 1119 (Utah 1977); *Snow v. Snow*, 13 Utah 15, 43 P. 620 (1896). In *Bradshaw, Thomas,* and *Snow,* the contempt orders arose out of supplemental proceedings after a final judgment; therefore, it was unlikely that any subsequent judgment would be entered from which an appeal could

Von Hake contends that we should dismiss this appeal because the order entered against Thomas adjudges him guilty of civil contempt and is not appealable. The appealability of a contempt order has historically depended on whether the judgment could be classified as criminal or civil.[2] Under modern authority, an order finding one guilty of criminal contempt is generally considered to be a final order separate from any ongoing proceedings and appealable as a matter of right. *See Utah Power & Light Co. v. Richmond Irrigation Co.*, 80 Utah 105, 114, 13 P.2d 320, 323 (1932); *In re Christensen Eng. Co.*, 194 U.S. 458, 458–59, 461, 24 S.Ct. 729, 729–30, 731, 48 L.Ed. 1072 (1904); *Carbon Fuel Co. v. United Mine Workers of Am.*, 517 F.2d 1348, 1349 (4th Cir.1975). On the other hand, an order finding one to have committed a civil contempt is considered interlocutory and not appealable as a matter of right. *See, e.g., Fox v. Capital Co.*, 299 U.S. 105, 107, 57 S.Ct. 57, 59, 81 L.Ed. 67 (1936); *see generally* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3917 (1976 & Supp.1987); 9 J. Moore, B. Ward & J. Lucas, *Moore's Federal Practice* § 110.13[4] (1987 & Supp.1987–88) (both discussing status of contempt orders as final judgments for purpose of appeal).[3]

be taken. The instant case is similar in that the order here was also entered as a result of supplemental proceedings. This suggests that even if the contempt in this case were civil, it could well be appealable. The disposition we make of this appeal does not require that we decide this question. *Cf. United States v. McWhirter*, 376 F.2d 102, 105 (5th Cir.1967) (allowing appeal from Federal Rule of Civil Procedure 69(a) proceedings); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3917, at 622–24 (1976) (suggesting reconsideration of rigid federal rule disallowing appeals of civil contempt orders); *Knox v. Mun. Court of Des Moines*, 185 N.W.2d 705, 707 (Iowa 1971) (stating that because all contempts are considered quasi-criminal in Iowa, no distinction is made between civil and criminal contempt).

We also note that the modern rule on appealability is exactly opposite the former rule which allowed appeals from civil contempt orders but not from criminal contempt convictions. *Compare Robinson v. City Court ex rel. City of Ogden*, 112 Utah 36, 185 P.2d 256 (1947), *with In re Whitmore*, 9 Utah 441, 35 P. 524 (1894).

■ The primary determinant of whether a particular contempt order is to be labeled civil or criminal is the trial court's purpose in entering the order.[4] *See* 3 C. Wright, *Federal Practice & Procedure* § 704 (1982). A contempt order is criminal if its purpose is to vindicate the court's authority, as by punishing an individual for disobeying an order, even if the order arises from civil proceedings. *See, e.g., Foreman v. Foreman,* 111 Utah 113, 118–19, 176 P.2d 165, 168–69 (1947); *Utah Power & Light Co. v. Richmond Irrigation Co.,* 80 Utah at 112–14, 13 P.2d at 323–24. A contempt order is civil if it has a remedial purpose, either to coerce an individual to comply with a court order given for the benefit of another party or to compensate an aggrieved party for injuries resulting from the failure to comply with an order. *See, e.g., Bradshaw v. Kershaw,* 627 P.2d 528, 530 (Utah 1981); *Shillitani v. United States,* 384 U.S. 364, 368–70, 86 S.Ct. 1531, 1534–36, 16 L.Ed.2d 622 (1966); *cf. In re Whitmore,* 9 Utah 441, 35 P. 524, 526–29 (1894) (discussing the differences between criminal and civil contempt). It is important to note that it is the purpose, not the method of the punishment, that serves to distinguish the two types of proceedings. Both fines and imprisonment may be used

to coerce a party or remedy a failure to perform as well as to vindicate a court's authority. *See Bradshaw,* 627 P.2d at 530; Utah Code Ann. §§ 78–32–10 to –12 (1987). One distinguishing factor is whether the fine or sentence is conditional. A remedial purpose is indicated when the contemner is allowed to purge him- or herself of the contempt by complying with the court's orders. *Maggio v. Zeitz,* 333 U.S. 56, 68, 68 S.Ct. 401, 407, 92 L.Ed. 476 (1948); *see* Utah Code Ann. § 78–32–12 (1987) (allowing conditional imprisonment).[5]

■ In the present case, the trial court stated two reasons for the contempt order: (i) Thomas's failure to appear personally at the May 4th hearing; and (ii) Thomas's failure to produce copies of certain tax returns. To the extent that the order was intended to punish Thomas for failing to appear, it was criminal. Thomas's failure to appear was a direct affront to the dignity and the authority of the court. The order of contempt issued in response to his failure to appear was meant to vindicate that authority by punishing Thomas, not to remedy his absence. This conclusion is supported by the fact that the sentence is a flat thirty days and not conditional, as, for example, "thirty days, or until defendant purges himself of contempt." If the

---

**4.** When a court's purpose for issuing a contempt order is not clear, we will consider other factors. The caption placed on the contempt proceeding is one such factor, because the caption should indicate whether the proceeding is a continuation of the underlying civil action or an independent criminal action. *See Nye v. United States,* 313 U.S. 33, 42, 61 S.Ct. 810, 812, 85 L.Ed. 1172 (1941).

**5.** After this opinion had been prepared, the United States Supreme Court released its opinion in *Hicks ex rel. Feiock v. Feiock,* —— U.S. ——, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). Although the *Feiock* majority ostensibly merely followed the Court's prior cases, we agree with the dissenting justices that, in fact, *Feiock* significantly alters the federal rule for determining whether a contempt order is civil or criminal in nature. *See id.* —— U.S. at —— – ——, 108 S.Ct. at 1437–39 (O'Connor, J., dissenting).

Under the reformulated *Feiock* rule, the primary criterion for making such a classification is the fixed or contingent character of the punishment imposed. Other indicators of a trial court's purpose are germane, but must give way to that primary criterion.

Although we, like the *Feiock* dissenters, differ with the majority's reading of prior cases on this point, we are in accord with the majority's express objective of clearing up a confusing area of the law. *Feiock* establishes a bright line rule that must be applied by both federal and state courts whenever a federal constitutional issue is raised. Although *Feiock* is not binding on state courts applying state law, it would be unnecessarily confusing and impractical for our courts to follow one rule for federal constitutional questions and a different rule for questions of state law.

To avoid such confusion, we now, prospectively only, adopt the *Feiock* approach as a matter of state law. For all future cases, we will follow the rule that a contempt order is criminal if the fine or sentence imposed is fixed and unconditional, but is civil if the fine or imprisonment is conditional such that the contemner can obtain relief from the contempt order merely by doing some act as ordered by the court. Further, a contempt order is civil if the order is to pay a fine to the other party rather than to the court. *See Feiock,* —— U.S. at —— – ——, 108 S.Ct. at 1429–34.

court's purpose were remedial, i.e., to coerce Thomas to appear at a later hearing, the court could simply have ordered Thomas arrested and brought in rather than using the contempt order to coerce him to appear. *See* Utah Code Ann. § 78–32–4 (1987). Furthermore, the order of imprisonment afforded no relief to Von Hake. Thus, the order of contempt is criminal in nature and therefore appealable to the extent that the contempt was Thomas's failure to appear in the face of a direct order.

■ The second basis for the finding of contempt was Thomas's failure to produce the tax returns as ordered. Although the matter is not entirely clear, we conclude that in this respect, the contempt should be labeled civil. The trial judge referred several times during the hearing to Thomas's dilatory and obstructionist tactics aimed at frustrating discovery. His findings also emphasized Thomas's intransigence. And Thomas had been repeatedly warned beforehand that he would be held in contempt if he failed to produce the documents as ordered. All this makes it appear that the underlying purpose of this portion of the contempt order was to coerce Thomas to produce the documents. Such a purpose makes the order of contempt civil and, under the general rule, not appealable. *But cf. United States v. Joyce*, 498 F.2d 592, 595 (7th Cir.1974) (failure to produce classified as criminal). However, because this contempt order appears to have both civil and criminal aspects, and because the order is properly before us insofar as it is criminal, we will consider all the bases advanced in support of it below. *See* 3 C. Wright, *Federal Practice and Procedure* § 704, at 828 (1982) (if order combines civil and crim-

inal elements, criminal aspect controls for purposes of appealability).

Having concluded that the contempt order is properly before us, the next question is whether it was properly entered. This question has two aspects, one procedural and one substantive. We first consider Thomas's contentions that he was denied his procedural rights.

Thomas argues that he was denied the due process protections of the fourteenth amendment because Von Hake did not file an affidavit spelling out the facts constituting contempt prior to the May 4th hearing and because the court did not hold a separate hearing on the issue of contempt.[6] The fourteenth amendment's due process clause requires that one facing the possibility of a contempt order must be afforded certain minimal procedural protections. *See Burgers v. Maiben*, 652 P.2d 1320, 1322 (Utah 1982). The question is: What are the protections due process requires in a case such as this? We first look to the relevant statutes.

The Code sets out two distinct procedures to be followed in contempt adjudications, one when the contempt is direct, i.e., committed in the presence of the judge, and the other when the contempt is indirect, i.e., committed outside the presence of the judge. Section 78–32–3 provides that direct contempt may be punished summarily. Nothing more is required than that the judge enter an order "reciting the facts as occurring in such immediate view and presence [of the court], adjudging that the person proceeded against is thereby guilty of a contempt, and that he [or she] be punished" by fine or imprisonment. Utah

---

6. Thomas's briefs make it difficult to determine whether he relies on the due process provisions of the Utah Constitution as well as the federal provision. Because he has not briefed the state constitutional issues separately, we analyze his claims solely under the due process clause of the fourteenth amendment of the federal constitution. *See State v. Lafferty*, 749 P.2d 1239, 1247 n. 5 (Utah 1988); *compare* U.S. Const. amend. XIV *with* Utah Const. art. I, §§ 7, 12.

Thomas also argues that he was denied due process by the court's failure to allow him a jury trial. However, he did not raise the issue in his initial brief to this Court, but rather in his reply

brief. Under Utah Supreme Court Rule 24(c) (formerly Utah Rule of Appellate Procedure 24(c)), as a general rule we will not consider an issue raised for the first time in a reply brief. *See Romrell v. Zions First Nat'l Bank*, 611 P.2d 392, 395 (Utah 1980). Thomas presents no reason for us to disregard that general policy, and we decline to do so. We note, however, that the United States Supreme Court has held that there is no federal constitutional right to a jury trial on criminal contempt charges that amount only to petty offenses. *See Hicks ex rel. Feiock v. Feiock*, — U.S. —, 108 S.Ct. 1423, 1430 n. 5, 99 L.Ed.2d 721 (1988).

Code Ann. § 78–32–3 (1987). Such summary proceedings for direct contempt are justified because they enable the court to maintain its authority by immediately punishing conduct that interferes with judicial administration. *See Brown v. Cook,* 123 Utah 505, 513, 260 P.2d 544, 548 (1953); *Ingram v. State,* 650 P.2d 888, 891 (Okla. Crim.App.1982). It has been held that due process requirements are satisfied in a summary proceeding for direct contempt because the judge has personally witnessed the acts constituting contempt and the person committing the contempt has full knowledge of the nature of the contempt charge and an opportunity to defend against the charge. *See City of Bernalillo v. Aragon,* 100 N.M. 547, 549, 673 P.2d 831, 833 (Ct.App.1983); *Commonwealth v. Marcone,* 487 Pa. 572, 579, 410 A.2d 759, 763 (1980); 17 Am.Jur.2d *Contempt* § 88 (1964). Federal Rule of Criminal Procedure 42(a) is substantially similar to section 78–32–3 of the Code; both allow summary proceedings for direct contempt. The federal rule has been upheld against numerous constitutional challenges. *See, e.g., United States v. Wilson,* 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975); *see also* 18 U.S.C. § 401 (1982) (providing federal courts with power to punish contempt); *Ex parte Terry,* 128 U.S. 289, 309, 9 S.Ct. 77, 81, 32 L.Ed. 405 (1888) (upholding common law rule allowing summary proceedings for direct contempt).

Indirect contempt, in contrast to direct contempt, can properly be adjudged only in a proceeding more tightly hedged about with procedural protections. The due process provision of the federal constitution requires that in a prosecution for a contempt not committed in the presence of the court, "the person charged be advised of the nature of the action against him [or her], have assistance of counsel, if requested, have the right to confront witnesses, and have the right to offer testimony on his [or her] behalf." *Burgers v. Maiben,* 652 P.2d at 1322; *see* U.S. Const. amend. XIV; *cf. Robinson v. City Court ex rel. City of Ogden,* 112 Utah at 42, 185 P.2d at 259 (applying Utah Const. art. I, § 12 to criminal contempt proceedings). These

protections are amplified upon in the Code, which requires, *inter alia,* that in a case of indirect contempt, an affidavit must be presented to the court reciting the facts constituting the contempt in order to ensure that the court and the person charged are informed of the conduct alleged to be contemptuous. Utah Code Ann. § 78–32–3 (1987); *Robinson,* 112 Utah at 41, 185 P.2d at 258.

In the present case, Thomas contends that he was entitled to be proceeded against in the fashion prescribed for indirect contempt. Because the trial court proceeded in a more summary fashion—specifically, without an affidavit specifying the contemptuous conduct or a separate hearing on the charge—Thomas claims he was denied his statutory and constitutional rights.

As noted, the contempt order was based both on Thomas's failure to appear and on his failure to produce documents. The procedures followed with respect to each ground for the contempt order must be considered separately to determine their lawfulness. We deal first with Thomas's failure to appear at the May 4th hearing. It is undisputed that no affidavit was filed with respect to this conduct. Therefore, if Thomas's failure to appear constituted an indirect contempt only, the judgment is defective under section 78–32–3. On the other hand, if his failure to appear amounted to direct contempt, Thomas was not entitled to the procedures he seeks.

■ We have never decided whether a party's failure to appear at a hearing when directed to do so by court order is a form of direct or indirect contempt, and we have found no cases directly addressing the issue in other jurisdictions. Courts in other states have split on the analogous issue of whether an attorney's failure to appear at a scheduled hearing is a direct contempt. Some hold that an attorney's failure to appear cannot logically be said to occur in the court's presence as is required for direct contempt. *See, e.g., State v. Diamond,* 94 N.M. 118, 121, 607 P.2d 656, 659 (Ct.App.1980); *Johnson v. State,* 599 P.2d 416, 418 (Okla.Crim.App.1979). The Utah

Court of Appeals has recently taken that position, holding that an attorney's failure to appear at his client's criminal trial was conduct that "occurred outside of the court's view, because the conduct consisted of his absence from court." *State v. Halverson*, 754 P.2d 1228, 1230 (Utah Ct.App.1988). However, we find more persuasive those decisions which hold that an attorney's failure to appear can, in appropriate circumstances, be regarded as conduct that occurs in the court's presence and represents an immediate interference with the administration of the court so as to justify summary proceedings. *See, e.g., Murphy v. State*, 46 Md.App. 138, 149, 416 A.2d 748, 755 (1980); *Chula v. Superior Court*, 57 Cal.2d 199, 203, 368 P.2d 107, 110, 18 Cal.Rptr. 507, 510 (1962); *cf. Brown v. Cook*, 123 Utah 505, 513, 260 P.2d 544, 548 (1953) (upholding a contempt conviction of a party for failure to bring a child into court for a custody hearing).

In the same vein, we think that a party's failure to appear in court when ordered to do so can, in appropriate circumstances, be treated as a form of direct contempt. This case presents the appropriate circumstances.

■■■ Thomas's failure to appear directly and immediately interfered with the court's ability to conduct the hearing. The circumstances clearly ensured that Judge Tibbs had personal knowledge of the necessary facts, that the substantive elements of contempt were present, that Thomas knew his conduct would be treated as contemptuous, and that Thomas had ample opportunity to defend his conduct—both prior to the hearing and through counsel at the hearing.[7] On these facts, we conclude that Thomas's failure to appear was committed in the "presence of the court" for purposes of section 78–32–3. Accordingly, we find that

the combination of circumstances in this case made it appropriate to use the summary procedures provided in section 78–32–3 of the Code, which Judge Tibbs did, and that these procedures met the minimum requirements of due process.

■■■ The second basis for the contempt order was Thomas's failure to produce the tax returns. The court had ordered him to produce the documents at the office of Von Hake's counsel prior to the May 4th hearing. Thomas's conduct in failing to produce the returns is properly classified as an indirect contempt because it occurred outside the court's presence. The record shows that the more elaborate procedures required for indirect contempts were followed with respect to this conduct. The statutory requirement of an affidavit was satisfied. *See* Utah Code Ann. § 78–32–3 (1987). In response to Thomas's April 23rd motion for an additional extension of time, Von Hake's counsel submitted an affidavit in opposition which asserted that Thomas had willfully refused to comply with the court's order directing the production of the tax returns. In his opposition papers, Von Hake's counsel also requested that the court proceed with the previously scheduled show-cause hearing on Thomas's failure to produce. Thomas had earlier been apprised, by the court's order of February 1st and by the statements made at the March 2nd hearing and in the March 12th order, that if he did not produce the returns as ordered, then at the May 4th hearing he would be required to show cause why he should not be held in contempt. Therefore, Thomas had ample notice of the charges made against him and of the pendency of the show-cause hearing, at which he was afforded the right to present evidence and confront witnesses,

---

7. We recognize that circumstances might arise in which a contemner would have a valid defense to a charge of contempt for failure to appear, but would have no reasonable opportunity to present that defense, and the court would not otherwise be informed of the relevant facts. We are not faced with those circumstances here—as Judge Tibbs was aware of the relevant facts and Thomas had the opportunity to justify his conduct. We note, however, that when a failure to appear is being considered as contemptuous conduct and such circumstantial justifications for summary proceedings are lacking, it would be appropriate to subsequently allow the contemner a reasonable opportunity to seek relief from the contempt order by presenting the court with facts previously unknown to it which would constitute a valid defense for the charge of contempt.

with the assistance of counsel. Thomas chose not to attend the May 4th hearing, but to send counsel to present his position.

On these facts, we conclude that the procedural requirements both of section 78–32–3 and of the fourteenth amendment's due process clause were met with respect to both bases of the contempt order. Having concluded that the proper procedures were followed, we are left with the question of whether the substantive elements of contempt were proven.

As a general rule, in order to prove contempt for failure to comply with a court order it must be shown that the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so. *Coleman v. Coleman,* 664 P.2d 1155, 1156 (Utah 1983); *Thomas v. Thomas,* 569 P.2d 1119, 1121 (Utah 1977). *But cf. Gill v. Gill,* 718 P.2d 779, 781 (Utah 1986) (Zimmerman, J., dissenting) (no intent required for civil contempt for violation of court order). These three elements must be proven beyond a reasonable doubt in a criminal contempt proceeding, *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911), and by clear and convincing evidence in a civil contempt proceeding. *Thomas v. Thomas,* 569 P.2d at 1121.

The trial court must enter written findings of fact and conclusions of law with respect to each of the three substantive elements. *Salzetti v. Backman,* 638 P.2d 543, 544 (Utah 1981); *Thomas v. Thomas,* 569 P.2d at 1122; *Race v. Race,* 740 P.2d 253, 258 (Utah 1987) (Durham, J., dissenting); Utah R.Civ.P. 52(a). *But cf.* Utah Code Ann. § 78–32–3 (1987). On review of both criminal and civil proceedings, we accept the trial court's findings of fact unless they are clearly erroneous. *State v. Walker,* 743 P.2d 191, 193 (Utah 1987); Utah R.Crim.P. 26(7) (codified at Utah Code Ann. § 77–35–26(7) (Supp.1987)); Utah R.Civ.P. 52(a).

We first consider Thomas's criminal contempt conviction for failing to appear. The order of commitment contains adequate written findings and conclusions, and we conclude that the record shows each element was proven beyond a reasonable doubt. Thomas had notice of what was required of him *via* the court's order that he must appear at the May 4th hearing unless he had first produced the returns and that if he failed to appear, he would be held in contempt. The trial court also had ample evidence that Thomas had the ability to comply with the order to appear. Thomas had several weeks after the entry of the order within which to inform the court of any reason that he would not be able to appear. He filed the motion for a postponement of the hearing only on the hearing day, May 4th, with no earlier notice to the court or Von Hake. The sole evidence offered to show that he was unable to appear was the conclusory statement in the physician's affidavit that Thomas was receiving psychiatric treatment and that his condition would be exacerbated by appearing at the hearing. The trial court was not required to accept the affidavit as conclusive proof that Thomas could not attend the hearing, especially in light of the facts, presented to the court, that Thomas had travelled from Salt Lake City to Kanab that day with his attorney and had participated in a lengthy court proceeding only one week earlier. Thomas presented no evidence that his purported illness had arisen so recently as to justify a last-minute motion for postponement. *Cf. Oriel v. Russell,* 278 U.S. 358, 363, 49 S.Ct. 173, 174, 73 L.Ed. 419 (1929) (contemner's alleged inability to comply with underlying order is not to be considered absent a showing that the inability has arisen since the date of the order). Under these circumstances, we cannot find clearly erroneous the trial court's conclusion that Thomas was merely engaging in dilatory tactics and that he had not raised a reasonable doubt about his ability to appear as ordered.

Finally, there is sufficient evidence that Thomas's failure to appear was willful. As noted, he did travel to Kanab with his attorney, so he was in the immediate vicinity of the courthouse; yet he did not appear. By submitting his motion to post-

pone at the last minute, in lieu of actually appearing, without warning to Von Hake or the court, and in the face of his failure to comply with the order to produce, Thomas gave the court ample basis to find that he was simply attempting to postpone facing the court and the almost certain prospect of a contempt finding. Thomas took a calculated risk that his untimely claim of legal disability would be rejected and his motion to postpone would be denied. The taking of that risk made his failure to appear as ordered willful.

 We next consider the second ground for the contempt order, Thomas's failure to produce the tax returns. Regarding the requirement of written findings and conclusions, the order of commitment states only that Thomas had been ordered to produce the documents, that Von Hake's counsel had notified the court that Thomas had made no effort to produce the tax returns, and that the court had determined that Thomas had failed to produce the returns as ordered. These determinations adequately relate that Thomas knew what was required of him and failed to comply. And the record reveals clear and convincing evidence to support such findings.

However, the order does not provide written findings and conclusions regarding Thomas's ability to comply with the order to produce the tax returns. Thomas has strenuously argued that he is unable to produce the returns. Von Hake has consistently disputed the issue. Ordinarily, we would defer to the trial court's assessment of such conflicting evidence. However, the lack of written findings and conclusions on that issue prevents our effective review of the question. Given our disposition of the direct criminal contempt order, we conclude that the indirect civil contempt order should be reversed for lack of the requisite written findings and conclusions.[8]

Thomas also seeks reversal of the underlying orders requiring him to produce the

tax returns, requiring him to appear at the May 4th hearing, denying extensions of time, and denying his motion to strike the affidavit of Von Hake's counsel regarding Thomas's ability to produce the tax returns. Given our disposition of the civil contempt judgment, we need not address the validity of the order to produce the returns or the order denying an extension of time. We have examined the remaining arguments and find them to be without merit.

The judgment of civil contempt is reversed. The conviction of criminal contempt is affirmed, the stay of execution is released, and the matter is remanded to the trial court for execution of the thirty-day sentence.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.

---

**8.** We do not imply that Thomas does not in fact have the ability to obtain the documents or that he may not be ordered to produce them under penalty of contempt, so long as the court follows the procedural and substantive rules we have outlined for indirect civil contempt proceedings. We do not reach the issue of whether there is clear and convincing proof that Thomas was able to comply with the order to produce the corporate and partnership returns.