**SALT LAKE CITY, a municipal corporation, Plaintiff and Appellant,**

v.

**Wyllis DORMAN–LIGH, Defendant and Appellee.**

**No. 950166–CA.**

Court of Appeals of Utah.

Feb. 23, 1996.

---

Larry V. Spendlove, Salt Lake City, for Appellant.

Kathryn P. Collard, Salt Lake City, for Appellee.

Before DAVIS, Associate P.J., and BENCH and WILKINS, JJ.

## OPINION

WILKINS, Judge:

Salt Lake City appeals the sanction imposed by the Third Circuit Court as articulated in the court's Findings of Fact and Conclusions of Law signed January 9, 1995. The court reversed its previous decision,

which dismissed the City's Criminal Information brought against defendant, because on reconsideration the trial court "f[ound] the [City's] arguments set forth in the [City's] *Motion for Rehearing and Supporting Points and Authorities* to be well taken." Nonetheless, the court dismissed the City's Criminal Information with prejudice "as a sanction against the Salt Lake City Prosecutor, for violating the Court's order to be in attendance at and prepared for, and to represent the Plaintiff at, the May 19, 1994 hearing in this matter." The court thereafter entered a written judgment and order of dismissal with prejudice. The City appeals the dismissal. We reverse and remand for trial.

### BACKGROUND

Salt Lake City filed a criminal information against defendant Dorman–Ligh charging violations of the City's housing code and other ordinances. Dorman–Ligh filed a motion to dismiss the information on various constitutional grounds. At a pre-trial conference held April 18, 1994, the Commissioner scheduled a hearing on the motion for May 19, 1994. At that same pre-trial conference, the Commissioner issued what she considered to be a verbal order for Cheryl Luke, the Salt Lake City Prosecutor, to personally appear and defend the motion to dismiss at the May 19 hearing.

During the April 18 hearing, the Commissioner noted that Ms. Luke had been personally involved in negotiations with defense counsel in the case and, therefore, presumably had a better understanding than the other city attorneys of the issues presented. Apparently with this in mind, the Commissioner made the following statements at the April 18 hearing:

[P]erhaps what we ought to do in the future is *if you would ask Ms. Luke to appear* and make the court aware of that. I likewise would have asked her to appear. *In fact let's do that, have Ms. Luke—I'll schedule a time and ask her if she will appear at that time both to argue this and to hear the matter, and I'll just give it a special setting.*

. . . .

I'd like to give her an opportunity to respond. . . .

. . . .

So why don't we reschedule this? I will indicate to you, Mr. Godfrey [the deputy city prosecutor present], I would like—since Ms. Luke has been the person who's been corresponding—

. . . .

I think that it would be appropriate that she be the actual attorney to handle this matter.

. . . .

Yes, okay. All right, then that's what we'll do, Thursday[,] May 19th at 9:30 for a hearing. I'm not going to schedule anything else on that date. *And I will expect [Ms.] Luke to be present. If [Ms.] Luke has a problem with that date have her get back to me immediately, all right?*

(Emphasis added).

At the May 19 hearing, Ms. Luke did not appear, but the City was represented by another Deputy City Prosecutor. The Commissioner said:

Now, with respect to Ms. Luke not being here, I'd like to talk to her and Mr. Godfrey. And, Mr. Gray, I will hope that you would get that information to them, and let me talk to them, and ask them to come up and see me at their earliest convenience. Because that was an order. And I'm not going to do anything until I talk to them.

The Commissioner then proceeded with the hearing, noting in the record that the City was unprepared for the hearing and had not filed any responsive memorandum regarding defendant's Motion to Dismiss. At the conclusion of the hearing, the Commissioner granted the Motion to Dismiss the Criminal Information and directed defense counsel to prepare appropriate findings of fact and conclusions of law.

Before the dismissal order was entered, the City objected to the proposed findings and made a Motion to Rehear the Motion to Dismiss. The Motion to Rehear was argued on September 1, 1994, and taken under advisement. On January 9, 1995, the Commissioner issued her findings and order, conclud-

ing that the City's argument was well made, and reversing the May 19 verbal dismissal order. However, as part of the January 9 order, the Commissioner dismissed the information with prejudice as a sanction against Ms. Luke for violating the order to be in attendance and prepared to represent the City at the May 19 hearing. The written judgment to that effect was entered February 15, 1994, and this appeal ensued.

We have determined that "[t]he facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument." Utah R.App.P. 29(a)(3).

## ANALYSIS

The City raises three issues on appeal. First, the City contends that the Commissioner's remarks regarding Ms. Luke's attendance at the May 19 hearing do not constitute a court order sufficient to support sanctions. Second, the City argues that even if the Commissioner's remarks constitute an order that supported sanctions, the court's failure to accord even notice and a hearing on the alleged contemptuous conduct violates the City's right to due process. Finally, the City claims that even if the Commissioner's comments constitute an order that supported sanctions, and even if the court's actions did not violate the City's due process rights, the sanction of dismissing the criminal charges against defendant with prejudice exceeds the court's authority, violates the separation of powers provisions of article V, section 1 of the Utah Constitution, and acts as an unlawful prejudice to the public health, safety, and welfare. We review each of these questions for correctness. *See generally State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

## I. The Court's Order

Although the Commissioner considered her comments an order that required Ms. Luke personally to attend the hearing, we fail to find an enforceable order in the record. At best, the Commissioner indicated a strong preference for Ms. Luke, as the senior prosecutor representing the City, to be present at the May 19 hearing. Twice during the interchange with counsel at the

April pre-trial conference, the Commissioner said she would "like Ms. Luke to be here" at subsequent hearings. Only in conclusion did the Commissioner express a qualified expectation that Ms. Luke would appear, saying, "And I will expect [Ms.] Luke to be present. If [Ms.] Luke has a problem with that date have her get back to me immediately, all right?" Thus, even this expectancy is qualified by language that only indicates the court's preference, not an order.

For the court to hold one in contempt of an order, that order must be clearly understood to be an order. To be enforced, an order must be sufficiently specific and definite as to leave no reasonable basis for doubt regarding its meaning. *International Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n,* 389 U.S. 64, 76, 88 S.Ct. 201, 208, 19 L.Ed.2d 236 (1967). Moreover, the order need not be in writing, but it must be objectively understandable as an order from which sanctions may accrue for disobedience. Such was not the case here. Therefore, the State could not be sanctioned for disobeying the Commissioner's request.

In addition, although we need not reach and do not decide the question of whether or not the trial court can direct a particular city prosecutor to appear and prosecute a criminal case, we find persuasive the City's argument that to do so violates the separation of powers required under article V, section 1 of the Utah Constitution. For a court to select the prosecutor appears to be an impermissible infringement upon the executive branch's duty and right to direct the prosecution.

## II. Notice and Hearing

Utah law clearly requires certain minimum steps to accord due process in contempt proceedings. A party's failure to appear in violation of a court order can, in appropriate circumstances, be treated as direct contempt and dealt with summarily by the court. However, even under those circumstances, the court must find that the party had ample notice of the charges against him, and of the pendency of the contempt hearing at which he may appear

and present evidence in his defense. *Von Hake v. Thomas,* 759 P.2d 1162, 1171 (Utah 1988). No such circumstances exist in this case.

Although the Commissioner referred to Ms. Luke's violation of the "order" in subsequent hearings, no notice was given to the City, nor to Ms. Luke, that the court was considering holding her in contempt for failure to appear at the May 19 hearing. Only when the final order denying defendant's Motion to Dismiss was announced, did the trial court make it clear that Ms. Luke was being held in contempt and the City's Criminal Information against defendant would be dismissed as a consequence.

The record reveals no notice to Ms. Luke, to any deputy city prosecutor appearing on the case, or to the City as a party, that contempt and sanctions were being considered. No hearing on the question was held, and no opportunity was afforded Ms. Luke or the City to present evidence and confront witnesses with the assistance of counsel. The Fourteenth Amendment's due process clause mandates these procedural safeguards. *Id.* at 1171–72. They have not been met by the trial court's actions in this case.

### III. Scope of Sanctions

■ Our conclusions that the Commissioner's comments do not rise to the level of an enforceable order and that the City has not been afforded due process fully dispose of this appeal. However, we recognize that on remand the trial court may address the issue raised by the City of appropriate sanctions under the circumstances of this case. We therefore briefly address this issue to provide guidance to the trial court on remand. *See State v. Emmett,* 839 P.2d 781, 786 (Utah 1992) (holding it appropriate to address issues on appeal that, while not necessary to resolve appeal, may arise on remand).

■ Dismissal of a criminal information as a sanction against the prosecutor is rarely appropriate, even if the prosecutor is in contempt of court. A dismissal can only be entered pursuant to Rule 25 of the Utah Rules of Criminal Procedure. Rule 25(a) provides for dismissal, in the trial court's discretion, "for substantial cause and in furtherance of justice." Utah R.Crim.P. 25(a). Rule 25(b) mandates dismissal for "unreasonable or unconstitutional delay" and for other very specific reasons. Utah R.Crim.P. 25(b). In the rare case in which the trial court dismisses a criminal information because of misbehavior by the prosecutor, the court must enter findings that carefully specify which Rule 25 provisions it relied upon. *See* Utah R.Crim.P. 25(c) ("The reasons for any such dismissal shall be set forth in an order and entered in the minutes."). Dismissal of the instant case cannot be justified under Rule 25.

### CONCLUSION

To constitute an enforceable order and for the court to hold one in contempt for the failure to obey it, that order must be clearly understood to be an order. An order must be sufficiently specific and definite so as to leave no reasonable basis for doubt as to its meaning. It need not be in writing, but the order must be objectively understandable as an order from which sanctions may accrue for disobedience. The Commissioner's comments to counsel in this case do not meet that standard and any sanctions imposed cannot stand.

Reversed and remanded for trial on the erroneously dismissed criminal information.

DAVIS, Associate P.J., concurs.

BENCH, Judge, concurring in result:

I wholeheartedly agree that "[d]ismissal of the instant case cannot be justified under Rule 25" of the Utah Rules of Criminal Procedure. Having so ruled, we need not address whether Ms. Luke could have been held in contempt of court. The discussion as to whether there was an enforceable order in place and whether the City was afforded due process is unnecessary to the resolution of this case. Although intriguing, the argument about separation of powers is also superfluous to the question of dismissal.

I therefore concur only in the result.