245 P.3d 213 (2010)
2010 UT App 356
STATE of Utah, Appellee,
v.
L.A., Appellant.
No. 20090642-CA.
Court of Appeals of Utah.
December 16, 2010.
*214 Scott L. Wiggins, Salt Lake City, for Appellant.
Kathi Sjoberg and Troy S. Rawlings, Farmington, for Appellee.
Before Judges DAVIS, ORME, and THORNE.

OPINION
THORNE, Judge:
¶ 1 L.A. appeals from the juvenile court's order holding her in contempt of court for failing to deliver her minor son, C.A., to juvenile detention as directed by C.A.'s probation officer. We reverse.

BACKGROUND
¶ 2 On April 13, 2009, the juvenile court placed C.A. on probation.[1] The juvenile court entered an order setting forth the terms and conditions of C.A.'s probation, which included provisions directed at C.A.'s parents, L.A. (Mother) and R.A. (Father). The provisions of the order directed at Mother and Father stated,
It is hereby further ordered that as the parent(s) ... of the probationer you will participate fully in the probation program and comply with the following conditions:
1. You will notify the probation department immediately of any violations of the probation order and/or court order.
2. You will attend meetings with the probation department, school officials, mental health providers or others as directed and ensure transportation is provided.
3. You will authorize any reasonable search of your home to ensure the probationer's compliance with the conditions of probation.
4. You will be financially responsible for the probationer's treatment and/or placement, if applicable.
5. You will not modify any conditions of the probation order.
Mother and Father both signed a statement acknowledging that willful failure to comply with the probation program or court orders could result in contempt charges, that they had received a copy of the probation order, and that they understood its terms.
¶ 3 On April 16, three days after the juvenile court entered its order, Probation Officer Kim Brehm obtained a urine sample from C.A. that tested positive for marijuana use. That same day, Brehm contacted Mother, told her about C.A.'s positive urinalysis, and asked Mother to bring C.A. to Brehm's office the next morning at 9:30. Brehm also informed Mother that she intended to obtain a warrant for C.A.'s detention by the time of the morning meeting. During this conversation, Mother apparently disagreed with Brehm's decision and expressed her views not only as to why C.A. tested positive but also on addiction generally.
¶ 4 On the morning of April 17, Mother went to C.A.'s school to pick him up for the meeting with Brehm, but was unable to locate him because he was in a school assembly. Mother called Brehm and left a message that C.A. could not be located. At approximately 11:30 a.m., Brehm tried to contact Mother by phone about the meeting and left a message again mentioning the warrant and stating that C.A. needed to be taken to juvenile detention immediately. About fifteen minutes later, Mother returned Brehm's call and spoke with her, informing her about the school assembly and Mother's inability to locate C.A. Brehm informed Mother that she was leaving the office at noon and that Mother needed to take C.A. to the detention center when he returned home from school because a warrant had been issued. Mother told Brehm that she felt that marijuana was not addictive and that C.A. was being treated unfairly. Brehm reiterated to Mother that C.A. needed to be taken to detention.
¶ 5 On Monday, April 20, Brehm learned that C.A. had not been taken to the detention center during the weekend. She attempted to contact both Mother and Father and eventually spoke with Father later that day. Father *215 denied knowing about the warrant or Brehm's directives to Mother to take C.A. to detention. Brehm then directed Father to take C.A. to detention immediately, but Father stated that C.A. had both a dentist appointment and a court-ordered drug and alcohol evaluation scheduled for the next morning. Brehm told Father to take C.A. to detention immediately despite those appointments.
¶ 6 When C.A. had still not reported to detention on the morning of April 21, Brehm contacted Mother about the situation. Mother informed Brehm that Father had taken C.A. to the drug and alcohol evaluation and denied knowing that Brehm had ordered Father to take C.A. to detention. Brehm again directed Mother to take C.A. to detention and informed Mother that she was seeking contempt charges against both Mother and Father. Later that day, C.A. was finally taken to detention.
¶ 7 Brehm filed affidavits in the juvenile court requesting orders to show cause and contempt findings against Mother and Father. As to Mother, Brehm's affidavit stated,
[Mother] has willfully failed to comply with the conditions of [the probation] order in that on or about April 17th, 2009, probation instructed [Mother] to take [C.A.] immediately to detention when he returned home from school that day which she failed to do. As of April 20th, 2009, at 4:00 [p.m. C.A.] has still not been taken to detention by his mother as requested by probation.
Brehm filed a similar affidavit concerning Father.[2]
¶ 8 The juvenile court held a contempt hearing on July 10, 2009, at which Brehm, Mother, and Father testified. At the conclusion of the hearing, the juvenile court determined that the portion of the probation order applicable to Mother and Father's failure to transport C.A. to detention was the section requiring them to "attend meetings with the probation department, school officials, mental health providers or others as directed and ensure transportation is provided." The juvenile court went on to say that the "[q]uestion is whether the parents were given directives to transport [C.A.] or to attend meetings, and whether they obeyed those orders or not."
¶ 9 With respect to Mother, the juvenile court found that Mother had attempted to take C.A. to the meeting with Brehm on the morning of April 17 but was unable to locate C.A. due to the school assembly. However, regarding Brehm's subsequent requests that Mother take C.A. to detention, the court found that
[M]other knew of the probation officer's directive to take [C.A.] to detention, and that she willfully disobeyed that order.
Her motive for disobeying that was what she expressed to the probation officer. She thought it was unfair, had some beliefs about marijuana not being that serious and some of those things. That was her motive for not obeying what the probation officer had directed.
... What is charged is the failure to obey the probation officer's directive to take [C.A.] to this meeting, which was the meeting to go to detention and for the mother to provide that transportation. She knew that that was the probation department's intent, and she willfully disobeyed that, and had several days to execute it but failed to do so.
The juvenile court found Mother in contempt for failing to obey the probation order, fined her $200, and imposed a suspended seven-day jail sentence. The juvenile court declined to find Father in contempt because Father had only learned of Brehm's detention directive on April 20 and had only delayed taking C.A. to detention because of his belief that C.A.'s court-ordered April 21 drug and alcohol evaluation created conflicting court orders. Mother appeals the juvenile court's order holding her in contempt.

ISSUES AND STANDARD OF REVIEW
¶ 10 Mother raises several challenges to the juvenile court's contempt order, including insufficiency of the evidence and failure by the juvenile court to enter adequate *216 findings of fact.[3] We will not disturb the contempt order unless Mother can demonstrate that the juvenile court exceeded its permitted range of discretion in entering the order. See Marsh v. Marsh, 1999 UT App 14, ¶ 8, 973 P.2d 988 ("The decision to hold a party in contempt of court rests within the sound discretion of the trial court. ...").

ANALYSIS
¶ 11 Mother first challenges the sufficiency of the evidence supporting the juvenile court's contempt order. "As a general rule, in order to prove contempt for failure to comply with a court order it must be shown that the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so." Von Hake v. Thomas, 759 P.2d 1162, 1172 (Utah 1988) (emphasis added). Thus, in order for the juvenile court to hold Mother in contempt, the evidence must have supported a finding that Mother knew that her actions violated the probation order.
¶ 12 The juvenile court determined that Mother had violated the provision of the probation order that required her to "attend meetings with the probation department, school officials, mental health providers or others as directed and ensure transportation is provided." The juvenile court found that "[w]hat is charged is the failure to obey the probation officer's directive to take [C.A.] to this meeting, which was the meeting to go to detention and for [Mother] to provide that transportation" and that Mother "knew that that was the probation department's intent." We agree with the juvenile court that Mother's knowledge of Brehm's directive was clear, but we see no evidence that Mother understood that Brehm's directive invoked the meetings clause in the probation order.
¶ 13 Mother's understanding that Brehm's directive constituted a mandatory meeting cannot be inferred from the plain language of the probation order. "For the court to hold one in contempt of an order, that order must be ... sufficiently specific and definite as to leave no reasonable basis for doubt regarding its meaning." Salt Lake City v. Dorman-Ligh, 912 P.2d 452, 455 (Utah Ct.App.1996); see also Foreman v. Foreman, 111 Utah 72, 176 P.2d 144, 156 (1946) (Wolfe, J., concurring) ("[A] court order[,] to be the basis of a finding of guilty of contempt for disobedience thereof[,] must be clear and unambiguous."). Here, the probation order's undefined command that Mother "attend meetings" was not so specific and definite as to give Mother notice that she had been ordered by the juvenile court to comply with any and all of Brehm's directives.
¶ 14 Rather, the probation order's requirement that Mother "attend meetings ... as directed" implies that there be some specific meeting for Mother to attend. Brehm could have scheduled such a meeting with Mother and C.A. at the detention center, and Mother would have been obligated to attend that meeting. However, Brehm's directive that Mother deliver C.A. to the detention center did not establish a meeting and, thus, there was nothing for Mother to attend.
¶ 15 Similarly, the probation order's language requiring Mother to "ensure transportation is provided" appears to refer only to transportation to scheduled meetings, and not to any other transportation that Brehm might request. We also note that Mother's obligation to provide transportation to meetings was limited to ensuring that transportation *217 was available. Thus, had Brehm scheduled a meeting at the detention center, Mother would have been required to ensure that C.A. had transportation to the meeting. But if C.A. had declined that transportation, any violation would have been C.A.'s rather than Mother's. In short, Mother's obligation to ensure that transportation was provided so that C.A. could attend meetings did not equate to an obligation to ensure that C.A. took advantage of such transportation or that he was actually delivered.
¶ 16 The juvenile court could have drafted the probation order to clearly require Mother's compliance with directives such as the one made by Brehm in this case. This might have been accomplished with specific language directing Mother to transport or deliver C.A. to detention upon Brehm's request, or by broader language requiring Mother to deliver C.A. to any location requested by Brehm or to comply with all of Brehm's probation-related directives. However, the probation order contained only the meetings language, which we deem insufficiently clear to have apprised Mother that she was obligated to comply with Brehm's directive to take C.A. to detention.[4]
¶ 17 There is simply no evidence from the contempt hearing to support a finding that Mother knew she was violating the juvenile court's probation order, as opposed to merely defying Brehm. In Brehm's testimony at the contempt hearing, she never characterized her directive that Mother take C.A. to detention as a meeting, nor did she testify that she had ever informed Mother that she was invoking the probation order's meeting clause to require C.A.'s transport to detention. Although Brehm testified that she had gone over the probation order with Mother at the time it was issued, she did not testify that she had explained to Mother that the meeting clause encompassed situations such as the detention directive.[5] Mother's own testimony acknowledged that Brehm had scheduled a morning meeting on April 17, but the juvenile court accepted Mother's excuse for failing to attend that meeting. Finally, Mother never testified that she understood the subsequent detention directive to be a "meeting" within the meaning of the probation order.
¶ 18 In sum, the probation order's language was not so specific and definite as to place Mother on clear notice that she was required by court order to comply with Brehm's directive.[6] Nor was there any evidence that either Brehm or the juvenile court ever explained to Mother that the meeting clause language was broad enough to include the conduct for which Mother was found in contempt. Under these circumstances, the juvenile court's contempt order was not supported by sufficient evidence that Mother "knew what was required," Von Hake v. Thomas, 759 P.2d 1162, 1172 (Utah 1988), and accordingly represents an unreasonable *218 exercise of the juvenile court's contempt powers. See id. (stating that contemnor's knowledge "must be proven beyond a reasonable doubt in a criminal contempt proceeding and by clear and convincing evidence in a civil contempt proceeding" (citation omitted)).

CONCLUSION
¶ 19 The juvenile court's probation order could have explicitly directed Mother to take C.A. to juvenile detention upon a probation officer's direction. It did not do so. Instead, the probation order's language required Mother to "attend meetings with the probation department, school officials, mental health providers or others as directed and ensure transportation is provided." This language is not so clear as to have given Mother notice that she was required by court order to take C.A. to juvenile detention upon Brehm's directive. Nor did Brehm or the juvenile court ever inform Mother that the probation order encompassed such situations. Accordingly, there is insufficient evidence to conclude that Mother "knew what was required" by the probation order, see id. at 1172, and we reverse the juvenile court's order holding Mother in contempt of court.
¶ 20 I CONCUR: JAMES Z. DAVIS, Presiding Judge.
ORME, Judge (dissenting):
¶ 21 In my view, the juvenile court's oral findings, while succinct, are sufficiently detailed to show that each element of contempt was satisfied. First, the juvenile court found that Mother "knew of the probation officer's directive to take [her son] to detention." The juvenile court further found that the terms of the probation order required Mother to attend and provide transportation for her son to attend all meetings at the direction of the probation department, and that a probation officer had directed Mother to bring her son to a meeting, i.e., to detention.[1] And the juvenile court found that, unlike in Father's case, Mother did not have a "[colorable] argument" that she was confused as she had not raised any concern with the probation officer about the need to comply with the officer's directive, instead interposing only ancillary concerns. These subsidiary findings are sufficiently detailed to show that Mother knew what was required of her under the probation order.
¶ 22 The juvenile court also found that Mother "had several days to execute" the probation officer's directive, as required by the probation order, but failed to do so. Even assuming that her son's attendance at a school assembly actually precluded her from retrieving him, as opposed to merely creating some possible embarrassment in connection with his retrieval, the juvenile court found that Mother still had "several opportunities" over the next few days to comply with the directive, but did not do so. This finding and related testimony adequately show that Mother had the ability to comply with the probation order.
¶ 23 Finally, the juvenile court determined that Mother "willfully disobeyed" the probation order. The juvenile court found that Mother knew it was the probation department's intent that she take her son to a "meeting" so he could be taken into detention. The juvenile court also found that Mother's motivation for failing to comply with the probation order was her feeling that the officer was being "unfair," coupled with her belief that marijuana use was not "serious." The juvenile court's finding regarding Mother's knowledge, coupled with its finding regarding Mother's motivation for failing to comply, adequately disclose the steps by which the court concluded Mother had "willfully disobeyed" the probation order. Thus, these findings adequately show that Mother *219 intentionally refused to comply with the probation order.[2]
¶ 24 I would affirm.
NOTES
[1] The record on appeal is unclear as to the nature of the offense that led to C.A.'s probation.
[2] Brehm's affidavit against Father is not contained in the record on appeal.
[3] Although Mother is correct that the juvenile court was required to enter explicit findings of fact with respect to each of the three substantive elements of contempt, see generally State v. Hurst, 821 P.2d 467, 469-71 (Utah Ct.App.1991), Mother did not preserve her argument that the juvenile court's findings were inadequate because she failed to raise the alleged inadequacy of the findings by objection below, see generally Robertson's Marine, Inc. v. I4 Solutions, Inc., 2010 UT App 9, ¶¶ 10-12, 223 P.3d 1141 (discussing the requirement of preserving challenges to the adequacy of factual findings). By contrast, Mother's argument regarding the insufficiency of the evidence need not be specifically preserved by objection below. See id. ¶ 11 ("`A trial court judge has the opportunity to address the sufficiency of the evidence to support the findings in his or her judgment.'" (quoting In re K.F., 2009 UT 4, ¶ 62, 201 P.3d 985)). Nevertheless, Mother did apprise the juvenile court of her position that her actions did not amount to missing a meeting when her counsel argued in closing that Mother "certainly didn't violate any [c]ourt order, any specific agreement of your Honor or that probation agreement." (Emphasis added.)
[4] We recognize that the juvenile court apparently intended the language of the probation order to encompass Brehm's directive, and we are reluctant to second-guess a trial court's interpretation of its own order. See generally Uintah Basin Med. Ctr. v. Hardy, 2008 UT 15, ¶ 9, 179 P.3d 786 ("A court's interpretation of its own order is reviewed for clear abuse of discretion and we afford the district court great deference."). However, the question here is not what the juvenile court actually meant by the order, but whether the order was specific and definite enough that Mother knew she was violating it when she failed to take C.A. to detention. See Salt Lake City v. Dorman-Ligh, 912 P.2d 452, 455 (Utah Ct.App.1996).
[5] Similarly, there is nothing in the record to suggest that the juvenile court explained to Mother when the probation order was issued that the meeting clause encompassed the conduct leading to the show cause order and contempt finding.
[6] Utah case law is replete with examples of court orders that have been held to be sufficiently clear and definite to support contempt findings for their violation. See, e.g., Utah Farm Prod. Credit Ass'n v. Labrum, 762 P.2d 1070, 1075 (Utah 1988) ("Malouf was present at the hearing when the trial court verbally ordered him to retain possession of the funds and to turn them over to the trustee. Malouf also received a written copy of the order on March 6, 1985. After receiving both the verbal order and the written copy of that order, Malouf nevertheless continued to disburse funds to himself and his clients in direct violation of the order."); Envirotech Corp. v. Callahan, 872 P.2d 487, 498-99 (Utah Ct.App.1994) (affirming contempt for transferring assets in violation of preliminary injunction); Kunzler v. O'Dell, 855 P.2d 270, 275-77 (Utah Ct.App.1993) (affirming contempt where district court "specifically told [contemnor] that dumping onions was inappropriate behavior").
[1] I recognize it is a stretch to conclude that reporting for detention qualifies as a meeting, as the term is used in the probation order. However, Mother did not challenge this determination below and gives it only passing attention on appeal. Because this claim is raised for the first time on appeal, and is inadequately briefed in any event, we should not address it. See Utah R.App. P. 24(a)(9); Phillips v. Hatfield, 904 P.2d 1108, 1109-10 (Utah Ct.App.1995) (declining to address issue where party made no citation to record and set forth little in the way of reasoned analysis).
[2] That the findings are adequately detailed is especially apparent in comparison to the cursory oral findings we upheld in State v. Hurst, 821 P.2d 467, 468-71 (Utah Ct.App.1991).