2011 UT App 241

**STATE of Utah, in the interest of D.V., a person under eighteen years of age.**

**D.V., Appellant,**

v.

**State of Utah, Appellee.**

**No. 20090589–CA.**

Court of Appeals of Utah.

July 29, 2011.

Kristine M. Rogers, Salt Lake City, for Appellant.

Mark L. Shurtleff and Kris C. Leonard, Salt Lake City, for Appellee.

Before Judges DAVIS, THORNE, and BILLINGS.[1]

## OPINION

THORNE, Judge:

¶ 1 D.V. appeals from the juvenile court's adjudication finding him in contempt of court. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 On May 10, 2006, the juvenile court entered an order placing D.V. in the interim custody of the Division of Child and Family Services (DCFS). On May 10, 2009, D.V.

---

1. The Honorable Judith M. Billings, Senior Judge, sat by special assignment pursuant to Utah Code section 78A–3–103(2) (2008) and rule 11–201(6) of the Supreme Court Rules of Professional Practice.

ran away from his DCFS placement. The State filed a petition alleging contempt for violating the 2006 order placing D.V. in the custody of DCFS. The allegation was based on only a claim that D.V. had run away from his foster placement.

¶ 3 The juvenile court held a trial on the contempt allegation. The State called two witnesses: Adam Attridge, D.V.'s DCFS caseworker, and Jose Trujillo, D.V.'s counselor at Valley Mental Health. D.V.'s DCFS caseworker testified about statements D.V.'s foster mother made to him on the day D.V. did not return to his foster placement.[2] Defense counsel objected on hearsay grounds. The State argued that the testimony was admissible under rule 1101 of the Utah Rules of Evidence. The juvenile court invited defense counsel to respond. Defense counsel declined and the court admitted the hearsay evidence based on rule 1101. Thereafter, D.V.'s counselor testified about statements D.V.'s mother and grandmother had made to him.[3]

¶ 4 The juvenile court, in its oral ruling, found D.V. in contempt, stating as follows:

> In addition to the order from—let me see—May [10]th, I can take judicial notice of the Court's file that on at least six different occasions [D.V.] was present with his guardian ad litem and each and every one of those occasions I reiterated that [D.V.] was in the custody of DCFS.
>
> Additionally, the evidence that [D.V.] called his foster mother, that he also called his grandmother and said that he needed some money and that he needed help is evidence that he knew he wasn't supposed

to be on the run and that he wasn't supposed to leave the placement.

> So I will find that allegation 38 [contempt] is true....

Following trial on the contempt allegation, the juvenile court ordered D.V. to continue in the custody of DCFS and that D.V. be held in detention pending placement within forty-eight hours. D.V. timely appealed from the juvenile court's contempt order.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 D.V. argues that the juvenile court erred by admitting hearsay testimony of statements D.V.'s mother, his grandmother, and his foster mother made to his DCFS caseworker and his counselor. "The question of whether evidence is admissible can be either a question of discretion, which we review for abuse of discretion, or a question of law, which we review for correctness." *State v. Bujan*, 2006 UT App 322, ¶ 14, 142 P.3d 581 (internal quotation marks omitted). "In this instance, because [D.V. essentially requests this court] to address the meaning of a rule of evidence, there is a question of law and we assess the trial court's ruling for correctness." *Id.*

¶ 6 D.V. also argues that there was insufficient evidence for the juvenile court to find him in contempt of the order placing him in the interim custody of DCFS. "When reviewing a bench trial for sufficiency of the evidence we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if [we] otherwise reach[ ]

---

2. In response to the prosecutor's question to D.V.'s caseworker about whether he was made aware of the May 10th incident, the case worker testified as follows: "Yes. His foster mother called. He'd been on a home visit that weekend. She called Monday, I believe it was May 11th, stating that he had never returned from the home visit. And then he hadn't returned until he was picked up a couple of weeks ago."

3. D.V.'s counselor testified regarding D.V.'s mother and grandmother's statements as follows:
> Q. ... [O]n May 10th of this year, were you contacted by somebody in [D.V.'s] family?
> A. I was contacted by the grandmother who called me and asked me if [D.V.] had returned home—to his—back to his foster home. At that time I did not know. I hadn't

heard anything so I called the foster parents and the foster mother confirmed that he had not shown up.
> Q. Okay. And were you involved in having him picked up?
> A. His biological mother contacted me two days before he was picked up and asked that I have the police meet him at her work. They set up a time for him to go get money from her. And she said that he needed help in the worst way. And so that's how—and that's when I called—well, I called [D.V.'s DCFS caseworker] the day she gave me the address and the time. And he asked me to notify the police because I was doing transport at that time.

a definite and firm conviction that a mistake has been made." *American Fork City v. Rothe,* 2000 UT App 277, ¶ 4, 12 P.3d 108 (alterations in original) (internal quotation marks omitted). In order to hold D.V. in contempt of court, the State must prove beyond a reasonable doubt, that he "knew what was required, had the ability to comply, and intentionally failed or refused to do so." *Von Hake v. Thomas,* 759 P.2d 1162, 1172 (Utah 1988).

## ANALYSIS

### I. Hearsay Testimony

■■■ ¶ 7 D.V. first argues that the juvenile court erred by admitting hearsay testimony of statements D.V.'s mother, his grandmother, and his foster mother made to his DCFS caseworker and his counselor. The juvenile court ruled that the evidence was admissible under rule 1101 of the Utah Rules of Evidence, which provides that the rules of evidence are inapplicable in "[c]ontempt proceedings in which the court may act summarily." Utah R. Evid. 1101(b)(4). On appeal D.V. argues that the rule does not apply because his contempt charge was not subject to summary action, as it was not "committed in the immediate view and presence of the court, or judge at chambers." *See* Utah Code Ann. § 78B–6–302 (2008) (distinguishing between contempt that may be punished summarily and contempt that requires a hearing). Additionally, because a defendant has the right to confront witnesses in a contempt proceeding where the contempt was committed outside the presence of the court, *see Gardiner v. York,* 2010 UT App 108, ¶ 44, 233 P.3d 500, *cert. denied,* 238 P.3d 443 (Utah 2010); *see also Burgers v. Maiben,* 652 P.2d 1320, 1322 (Utah 1982), D.V. argues that the juvenile court's admission of hearsay evidence violated his rights under the Sixth Amendment to the United States Constitution, *see* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . .").

■■■ ¶ 8 The State argues that D.V.'s claims are not preserved. "Utah courts require specific objections in order to bring all claimed errors to the trial court's attention to give the court an opportunity to correct the errors if appropriate." *State v. Johnson,* 2006 UT App 3, ¶ 13, 129 P.3d 282 (internal quotation marks omitted); *see also In re K.F.,* 2009 UT 4, ¶ 62, 201 P.3d 985 (" '[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue.' " (second alteration in original) (quoting *438 Main St. v. Easy Heat, Inc.,* 2004 UT 72, ¶ 51, 99 P.3d 801)); *Pratt v. Nelson,* 2007 UT 41, ¶ 15, 164 P.3d 366 ("[A] party may not claim to have preserved an issue for appeal by merely mentioning . . . an issue without introducing supporting evidence or relevant legal authority." (omission in original) (internal quotation marks omitted)). At trial, D.V. objected to the testimony of the DCFS caseworker on hearsay grounds. The State conceded that the challenged testimony was hearsay, but argued that it was nevertheless admissible as an exception under rule 1101.[4] Before the trial court ruled on the applicability of rule 1101, the court asked D.V.'s counsel, "[A]nything you want to say about that?" She responded, "No," and did not pursue the matter further.

■■■ ¶ 9 We conclude that D.V.'s challenge to the applicability of rule 1101 was not preserved because the arguments he advances on appeal were not raised below. First, the issue on appeal is not whether the admitted testimony was hearsay but whether the rule 1101 exception applies in a nonsummary contempt proceeding. D.V.'s hearsay challenge was not specific enough to preserve his challenge to the applicability of rule 1101, particularly given his failure to make an argument on that issue when specifically invited to do so by the court. *See generally Blecha v. People,* 962 P.2d 931, 940 (Colo. 1998) (observing that to preserve a hearsay challenge, "[f]urther argument by the attorney may be appropriate if the proponent

---

4. Rule 1101 provides that "[t]he rules [of evidence] (other than with respect to privileges) do not apply in the following situations: . . . (b)(4) Contempt proceedings in which the court may act summarily." Utah R. Evid. 1101(b)(4).

expresses reliance on a particular hearsay exception"); *Sifrit v. State*, 383 Md. 116, 857 A.2d 88, 99–100 (2004) ("[T]rial courts [are not required] to imagine all reasonable off-shoots of the argument actually presented to them before making a ruling on admissibility."). Second, a hearsay objection is not sufficient to preserve a Confrontation Clause argument for appeal, *see, e.g., United States v. Perez*, 989 F.2d 1574, 1582–83 (10th Cir. 1993); *see also State v. Low*, 2008 UT 58, ¶ 17, 192 P.3d 867 ("[I]f a party makes an objection at trial based on one ground, this objection does not preserve for appeal any alternative grounds for objection."), so D.V. cannot now raise this alternative challenge to the trial court's admission of the hearsay testimony. Nor has D.V. argued a basis for considering his unpreserved claim for the first time on appeal. *See generally State v. Cram*, 2002 UT 37, ¶ 4, 46 P.3d 230 ("[T]he exceptions to the preservation rule ... include plain error, exceptional circumstances, [and] ineffective assistance of counsel."). Therefore, we do not consider the merits of D.V.'s hearsay claims.

## II.  Contempt Finding

¶ 10 D.V. next argues that there was insufficient evidence for the juvenile court to find him in contempt. D.V. challenges the juvenile court's conclusion that D.V. knew that running away from his foster placement was a violation of the juvenile court's orders. "When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if [we] otherwise reach[ ] a definite and firm conviction that a mistake has been made." *American Fork City*, 2000 UT App 277, ¶ 4, 12 P.3d 108 (alterations in original) (internal quotation marks omitted). In order to establish that D.V. was guilty of contempt, the State was *required to prove*, beyond a reasonable doubt, that D.V. "knew what was required, had the ability to comply, and intentionally failed or refused to do so." *Von Hake*, 759 P.2d at 1172. Thus, to hold D.V. in contempt, the evidence must support a finding that D.V. knew his action of running away from his foster placement violated the juvenile court's order. *See id.*

¶ 11 Here, the juvenile court determined, in its oral ruling on July 6, 2009, that D.V. knew what was required of him based on the May 10, 2006 order, which ordered fourteen-year-old ·D.V. "placed in the interim custody of [DCFS]." The juvenile court, in its oral ruling, also found "the evidence that [D.V.] called his foster mother, that he also called his grandmother and said that he needed some money and that he needed help is evidence that he knew that he wasn't supposed to be on the run and that he wasn't supposed to leave the placement." D.V. argues that alone this evidence does not necessarily establish that he knew the legal consequences of running from his foster placement. Acknowledging a need for help and requesting it is not necessarily proof that a juvenile knows he is violating a court order directing him to do, or refrain from, some particular action. Nor is it sufficient proof that a juvenile knows he is violating a court order simply because a court determines that the juvenile "understands" that he is not supposed to do something such as running away from his foster placement. A juvenile may not know that such an action would have any different consequence than running away from home prior to the existence of a court order.

¶ 12 The juvenile court also took judicial notice of the fact that the court had previously, on at least six occasions, reiterated to D.V. that he was in the custody of DCFS. However, D.V. argues that neither the written nor verbal evidence supports the juvenile court's finding that D.V. knew what was required of him. D.V. argues that the order is not sufficiently specific as it relates to D.V., *see State v. L.A.*, 2010 UT App 356, ¶ 13, 245 P.3d 213, and that the evidence at trial does not demonstrate that D.V. had been given specific and clear notice of either what was required of him or the potential consequences for failure to comply, *see Von Hake v. Thomas*, 759 P.2d 1162, 1172 (Utah 1988).

### A.  Order

¶ 13 The order directed, "[D.V.] is/are placed in the interim custody of [DCFS]." There is, however, no evidence that D.V. ever

received or was shown a copy of the written order nor is there evidence that D.V. understood that the order placing him "in the interim custody of [DCFS]" required him to remain at the foster placement and that if he failed to do so, he could be held in contempt of court. Even if we were to assume that D.V. received a copy, the order itself directs that D.V. is *placed* in the interim custody of DCFS. To support a contempt finding, however, an order should specifically and definitely command or direct a person to do something such as go to school or remain with his foster placement or refrain from something. *See L.A.*, 2010 UT App 356, ¶ 13, 245 P.3d 213 ("For the court to hold one in contempt of an order, that order must be ... sufficiently specific and definite as to leave no reasonable basis for doubt regarding its meaning." (alteration in original) (internal quotation marks omitted)).

¶ 14 The pertinent portions of the order are as follows:

[D.V.] is/are placed in the interim custody of [DCFS]. The removal of the child(ren) from the home and placement of the child(ren) in the custody of an agency or individual other than his or her parents was in the best interest of the child(ren)[.] The parent(s) are ordered to contact the Office of Recovery Services (ORS) to determine a support amount for the child(ren) for the period that the custody of the child(ren) is given to an agency or support is assigned to the State of Utah in accordance with [Utah Code section] 62A–1–117 and 78–45–4.4. In the absence of a prior order you are required to contact ORS to determine your obligation, and if you fail to do so within 30 days, your liability shall accrue as of the date of this hearing. ORS shall be responsible for collecting the child support and disbursing it to the appropriate agency or individual. The court has advised the parent(s) of the above information regarding a child support obligation. The parent(s) shall contact ORS ... within 30 days.

[D.V.] is committed to detention for a period of 30 days to commence immediately. The Court authorizes the early release of said minor into the custody of the worker.

Any remaining detention days shall be stayed.

. . . .

Failure to comply with the above order may result in your being found in contempt of court, the loss of your driver license, and/or forfeiture of any or all of your Utah State Income Tax Refund.

Here, the order's undefined placement of D.V. without any command directed at D.V., related to that placement, results in an order that was not so specific and definite as to give D.V. real notice that he had been court-ordered to remain in a specific, or any foster placement. In contrast to the unclear placement language, the juvenile court in that same paragraph specifically commands that "[t]he parent(s) are ordered to contact the Office of Recovery Services to determine a support amount for the child[ ]." The contrasting language of the order further compounds the clarity problems of the juvenile court's direction to D.V.

¶ 15 Likewise, the contempt language of the order does not make it clear that failure to comply with said order might result in D.V. being held in contempt of court. The contempt section appears after various segments wherein the court made orders pertaining to D.V., his parents, and the agency. The order enumerated several consequences, in addition to a possible contempt finding, for failure to comply that did not apply to the then fourteen-year-old D.V., such as "the loss of your driver license, and/or forfeiture of any or all of your Utah State Income Tax Refund."

¶ 16 Arguably, the placement language and contempt section may be sufficient to put an adult on notice of what is expected. But applying such unclear terms to a child is problematic due to the child's youth and does not ensure that the child would have a sufficient level of understanding. *See J.D.B. v. North Carolina*, —— U.S. ——, 131 S.Ct. 2394, 2397, 180 L.Ed.2d 310 (2011) ("The law has historically reflected the ... assumption that children characteristically lack the capacity to exercise mature judgment and possess only an incomplete ability to understand the world around them."); *see also In re K.M.*, 2007 UT 93, ¶¶ 12–15, 173 P.3d 1279

(discussing the dilemmas that become evident "when the state is called upon to bring the power of law to bear on persons who, because of their youth, cognitive deficits, or other disabilities are incapable of comprehending how or why they are being held to account for their behavior" and explaining that "[j]uvenile court judges are, therefore, called upon to a much greater degree than their adult counterparts to discern between applications of the law that are arbitrary and those that are apropos"); *In re K.M.*, 2006 UT App 74, ¶ 30 n. 1, 136 P.3d 1230 (Orme, J., dissenting) (discussing a dilemma similar to the one later addressed in *In re K.M.*, 2007 UT 93, ¶ 12, 173 P.3d 1279). Because the written order speaks in terms of placing D.V. in the interim custody of DCFS and does not explicitly direct D.V. to remain in a particular foster placement or risk being held in contempt of court, the order is not clear enough to establish beyond a reasonable doubt that D.V., who was fourteen at the time of the court order, knew what specific conduct the court required of him.

¶ 17 Based on these circumstances, the juvenile court's written order was not sufficiently clear to demonstrate that D.V. knew that he, rather than or in conjunction with his parents, could be held in contempt for failing to comply with the juvenile court's order.

B. Verbal Notice

¶ 18 The juvenile court, in addition to considering the notice provided in the written order, took judicial notice of the fact that the court had previously on at least six occasions reiterated to D.V. that he was in the custody of DCFS. This evidence, however, does not support that D.V. was verbally provided with clear notice of what was required of him or the possibility of a finding of contempt for his failure to comply with the order. Nor is there other record evidence demonstrating that either the juvenile court or the caseworker explained to D.V. that the court order required him to remain with his foster placement and failure to do so may result in a contempt finding against D.V. The juvenile court's statement that it had, on at least six previous occasions, reiterated to D.V. the fact that he was in the custody of DCFS does not carry sufficient clarity and detail that a fourteen-year-old would have known what these statements meant at the time they were spoken—other than he could not live with his grandmother at the time as he wished—and that in fact he was to remain with the foster placement or he may be found in contempt of court and punished should he leave that placement. The court's verbal notifications suffer from many of the same deficiencies as the written order. The evidence of the juvenile court's repeated declarations of D.V.'s placement merely demonstrates that D.V. was told on several occasions that he was placed in the interim custody of DCFS without further explanation of what exactly was required of him or any discussion of the consequences if he did not comply with the placement order. The Supreme Court has observed that children "generally are less mature and responsible than adults, that they often lack the experience, perspective, and judgment to recognize and avoid choices that could be detrimental to them[.]" *J.D.B.*, 131 S.Ct. at 2403 (citation omitted).

¶ 19 Neither does the testimony of D.V.'s DCFS caseworker provide evidence that D.V. was put on notice that he may be found in contempt of court if he ran away from his placement. The caseworker specifically testified as follows,

Q. Okay. And [did] you explain to him what's expected of him?

A. Yes. We always make it very clear—well, I made it very clear to him and he understands the rules of what the consequences would be if he were to run from his Court ordered placement.

. . . .

Q. Okay. Is there anything else that would help [D.V.] to know what the rules are? Is there anything else that DCFS does?

A. Yes. We regularly have what's called team meetings where we get everyone together. . . . [W]e discuss what's happening in his life and in his case. We also discuss consequences so he is aware of what the consequences of his actions might be.

. . . .

Q. Okay. And prior to his leaving [the Adolescent Residential Treatment and Education Center], had you had one of these team meetings?

A. We had. We had one just a couple of weeks prior to his running away.... [W]e discussed the possibility that he wanted to go live with [his grandmother]. We discussed—we decided as a team, and he was there, that he would—stay in his current placement while we further investigated this option....

. . . .

Q. And so is it your opinion that [D.V.] knew what was expected of him?

A. Yes, it is.

Q. Okay. And you have explained the consequences of what would occur if he ran from his placement?

A. Yes.

Q. Okay. And what consequences did you discuss?

A. Well, he—the—obviously the consequences would be that there would be a pickup out for him, that he would either go to [detention] or youth services, depending on what was decided by the Court. But he—like I said, he had been in the system for three years and he knew the consequences. And we had discussed these consequences with him.

At most, the caseworker's testimony demonstrates that D.V.'s desires were discussed by adults and that D.V. was (1) told to stay at his placement while the caseworker and the other individuals on the case investigated the possibility of D.V. going to live with his grandmother and (2) told that if he ran away from his foster placement there would be a pickup order out for him and that he would either go to detention or youth services, depending on what the juvenile court decided. This may be sufficient to show that D.V. was aware that he should not leave his foster placement. It is not, however, sufficient to establish that D.V. knew that by leaving his placement he was acting in violation of a *court order*, as opposed to simply a DCFS directive, and might be found in contempt of court. *See State v. L.A.*, 2010 UT App 356, ¶ 17, 245 P.3d 213 ("There is simply no evidence from the contempt hearing to support a finding that [m]other knew she was violating the juvenile court's order, as opposed to merely defying [the probation officer].").

## CONCLUSION

¶ 20 D.V. argues that the juvenile court erred in ruling that the testimony of the DCFS caseworker was admissible under rule 1101 of the Utah Rules of Evidence. At trial, D.V. objected to the testimony of the DCFS caseworker on hearsay grounds. The juvenile court admitted the testimony as an exception under rule 1101 of the Utah Rules of Evidence. D.V. did not raise an objection to the application of rule 1101 even when invited to do so by the court. Because D.V. did not object to the admission of the caseworker's testimony based on rule 1101, he failed to preserve the issue and cannot now raise that challenge for the first time on appeal. Therefore, we affirm the juvenile court's decision to admit the hearsay testimony of statements D.V.'s mother, grandmother, and foster mother made to his caseworker.

¶ 21 D.V. asserts that there was insufficient evidence for the juvenile court to find him in contempt. D.V. challenges the court's conclusion that D.V. knew that running away from his foster placement was a violation of the juvenile court's orders. The juvenile court, in its oral ruling, determined that D.V. knew what was required of him based on the order that placed D.V. in the interim custody of DCFS and that the court had previously on several occasions informed D.V. that he was in the custody of DCFS. The written order, however, is not sufficiently specific to inform D.V. what was required of him or the potential consequences for failure to comply. Neither is there other record evidence to demonstrate D.V. was verbally provided with such notice. As a result, we determine that the evidence was not sufficient to support a finding of contempt beyond a reasonable doubt. Therefore, we reverse the juvenile court's contempt finding.

¶ 22 I CONCUR: JUDITH M. BILLINGS, Senior Judge.

DAVIS, Presiding Judge (concurring in part and dissenting in part):

¶ 23 I agree with the majority's reasoning and conclusion regarding D.V.'s challenge to the juvenile court's ruling on the admissibility of the hearsay evidence. However, I disagree with the majority's conclusion that there was insufficient evidence for the juvenile court to find D.V. in contempt.

¶ 24 I believe that the evidence before the juvenile court, particularly considered in its totality, was sufficient to establish that D.V. knew that running away from his foster placement was a violation of the juvenile court's orders. At the 2006 hearing that D.V. attended, the court clearly ordered D.V. into the custody of DCFS and expressly indicated that failure to comply with the court's order could result in his being found in contempt. Furthermore, the juvenile court took judicial notice of the fact that it had previously reiterated to D.V. on at least six occasions that he was in the custody of DCFS. D.V. argues that the court's order did not specifically mandate that he "comply with the terms of his placement" and that therefore the order did not put him on notice that he would be in contempt of court by running away from his foster placement. However, D.V. was clearly on notice that he had been ordered into DCFS custody and that he was obligated to comply with the court's order, so removing himself from that custody by running away was a clear violation of that order. Most significantly, D.V.'s caseworker opined that D.V. "knew what was expected of him," and testified that he had personally informed D.V. on multiple occasions of the potential consequences for running away from his foster placement. While the 2006 order certainly could have been more explicit, the fact that D.V. was subject to the order for three years prior to running away, during which time he was continually reminded by the court and his caseworker of the terms of the order, strongly suggests to me that D.V. knew what was required of him. Given this evidence, and in light of the deferential standard of review we must apply to sufficiency of the evidence challenges, see *American Fork City v. Rothe*, 2000 UT App 277, ¶ 4, 12 P.3d 108 ("When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is against the clear weight of the evidence, or if [we] otherwise reach[ ] a definite and firm conviction that a mistake has been made." (alterations in original) (internal quotation marks omitted)), I would affirm the juvenile court's contempt ruling.